# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| MARK VONDENBERGER, | : | |
| Plaintiff, | : | |
| | | Case No. 3:14cv00202 |
| vs. | : | |
| | | District Judge Walter Herbert Rice |
| CAROLYN W. COLVIN, | : | Chief Magistrate Judge Sharon L. Ovington |
| Acting Commissioner of the Social | | |
| Security Administration, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.      Introduction

Plaintiff Mark Vondenberger brings this case challenging the Social Security Administration's denial of his applications for Disability Insurance Benefits and Supplemental Security Income.  He asserts here, as he did before the administration, that he has been under a benefits-qualifying disability – starting on June 15, 2011 – due to back problems, depression, anxiety, bipolar disorder, agoraphobia, cellulitis, high blood pressure, and obesity.

The case is presently before the Court upon Plaintiff's Statement of Errors (Doc. #10), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc.

_____

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

#13), the administrative record (Doc. #6), and the record as a whole.

## II.   <u>Background</u>

### A.   <u>Plaintiff's Testimony</u>

Plaintiff was 51 years old on the alleged disability onset date, which defined him as a "person closely approaching advanced age" for purposes of resolving his DIB and SSI claims.  *See* 20 C.F.R. §§ 404.1563(d); 416.963(d)[2].  He has at least a high school education.  His past relevant employment includes jobs as a clinical counselor and advertising solicitor.

At his administrative hearing in January 2013, Plaintiff testified he is 6' 3" tall and weighs approximately 407 pounds.  (*PageID#* 70).  He testified he gained about 50 to 60 pounds over the past year, which he attributes to "medication changes and poor diet." (*Id.*).  Plaintiff has a driver's license but his case manager brought him to the hearing.  He stated he has not driven in 7 years.

Plaintiff has a Master's degree in counseling from Wright State.  He worked intermittently as an advertising executive from 2001 to 2007.  Plaintiff identified the combination of his cellulitis and back problems as the impairments he believes are most disabling.  Plaintiff testified he has wounds from his cellulitis: "[i]t starts out like big blisters and then they open up and they get sore and runny and infected . . . so it's just pretty uncomfortable."  (*PageID#* 73).  This occurs in both of his legs, although the left leg

---

[2] The remaining citations will identify the pertinent DIB Regulations with full knowledge of the corresponding SSI Regulations.

2

is typically the worst.  He has been experiencing these problems since 2010.  Plaintiff

testified the cellulitis not only impacts his ability to walk, but also is "like a discomfort,

constant discomfort."  (*PageID#* 74).  Plaintiff stated that once the blisters open up they

"require[] a lot of care and when it gets to a point of where it's throbbing and it's, it's that

discomfort, I have to lay down and put – elevate my legs . . . ."  (*Id.*).  When his cellulitis

is active, this happens "at least once a day. . . sometimes more."  (*PageID#* 75).  Plaintiff

testified the cellulitis was presently in a dormant stage, and "is the best it's been in a long

time."  (*Id.*).  Plaintiff fears he is "going to contract some kind of weird infection or when,

when the blisters are open – or that, you know, the worst, if it comes to worst they want to

amputate my feet, my legs or something . . . ."  (*PageID#* 76).  Plaintiff estimates that

since 2010 he has had "active" phases of the cellulitis blisters "[r]egularly every two

months.  Every eight weeks to 10 weeks."  (*PageID#* 79). Even though he considers them

dormant at the time of the hearing, he indicated he expects they will return in the next 3

weeks.  (*PageID#* 80).

   As to his low back pain, Plaintiff indicated he has been dealing with this since the

age of 19.  (*Id.*).  It started when he was in a car accident and had back surgery as a result.

He was unable to stand, walk, "just couldn't function."  (*Id.*).  Although the surgery helped

him for approximately 4 years, Plaintiff testified, "all of a sudden the back pain started

back up and the doctors thought it was scar tissue so I dealt with that.  But it just gradually,

and I'm sure that my weight has a lot to do with it.  It just causes me a lot of discomfort."

(*PageID#* 81).  Plaintiff stated he has good days and bad days with his back pain.  On a

bad day, without medication, he rates his pain on a scale of 1 to 10 (10 being the worst) as a 9 to 10 out of 10.  (*Id.*).  On a bad day, with medication, he rates the pain as a 6 to 7.  He acknowledged the medication helps, although the pain increases upon exertion.  On a good day, he does not even need to take medication for the pain.  He can "stand up, sit, . . . move around without discomfort."  (*PageID#* 81).  Plaintiff testified he was having a "medium" amount of back pain at the time of the hearing.  (*PageID#* 81).

Plaintiff does not believe he could walk a city block.  He uses an electric cart to get around while shopping.  Plaintiff estimates he can only stand for 2 to 3 minutes at a time, can sit for 45 minutes to 1 hour at a time, and can only lift 10 pounds or less.  On bad days, Plaintiff is not even able to lift a gallon of milk (approximately 8 pounds).

As to Plaintiff's mental impairments, he testified his bipolar disorder is "probably the most disabling, as I've come to terms with it and realized that I've had this going on my whole life, and it's just been diagnosed in the last six years really.  And I've been to multiple psychiatrists and I've worked with multiple psychiatrists, and no one ever picked up on it and I can't understand why."  (*PageID#* 87).  He believes he has been bipolar since at least the age of 19.  (*Id.*).  Plaintiff testified all three of his brothers have bipolar disorder, and one of them committed suicide.  The manic phase of his bipolar disorder sometimes causes him to be up for 3 to 4 days at a time, although medication has been helping him sleep 4 to 6 hours per night.

Plaintiff indicated his attention and concentration "tend to be poor," (*PageID#* 89), and he gets overwhelmed very easily.  (*Id.*).  Plaintiff also stated his short-term and long-

term memory are "terrible." (*PageID*# 90).  He has trouble interacting with other people and avoids crowds.  Plaintiff also suffers from depression and has been hospitalized twice due to attempting suicide.  (*PageID*# 91).  Some days he just stays in bed most of the time.  Plaintiff also suffers from anxiety and panic attacks.  He estimates he has a panic attack at least daily.

Plaintiff further testified that he lives alone.  He is able to cook microwaveable meals or items that only require baking in the oven.  He uses paper plates and plastic utensils to eat so he does not have to do any dishes.  He stated he would not be able to stand long enough to wash dishes otherwise.  He is unable to vacuum or sweep.  A friend does his laundry for him.  On a typical day, Plaintiff wakes up, watches television, naps, then watches more television.  (*PageID*# 95).  He is usually laying or sitting on the couch while watching television.  He tucks a cushion between his legs to help alleviate his back pain.  His mind often drifts while watching television.  He only leaves his home about once a week.

When cross-examined by his counsel, Plaintiff indicated he typically only bathes once every 3 weeks.  (*PageID*# 100).  He indicated he bathes infrequently because, even with a shower seat, it is painful to stand in the shower.  He stated, "[i]t's just a struggle to – and then if my back goes out, then I've got the slippery base of the tub to deal with and I fall.  I have fallen from that position before and it scares me that I'll do it again." (*PageID*#100).

Plaintiff also stated that he has been seeing his primary care physician, Dr. Lease,

since approximately June 2010. (*Id.*). He sees him on a regular 6 to 8-week basis, and during those visits Dr. Lease "spends a lot of time with [him], about 30 to 45 minutes each visit." (*PageID#* 101). Dr. Lease examines him at every visit, not just when "there's something new." (*Id.*). Plaintiff also has been treating with his psychiatrist, Dr. Woodrow, since 2010. He visits Dr. Woodrow approximately once every 6 to 8 weeks. She spends about 30 to 45 minutes with Plaintiff at each visit and he "trusts her." (*PageID#* 102).

### B. Medical Evidence

The administrative record contains many medical records plus opinions from Plaintiff's treating and non-treating medical sources. A detailed description of those records and opinions is unnecessary because the undersigned has reviewed the entire administrative record and because both the ALJ and Plaintiff's counsel have accurately summarized the relevant records concerning Plaintiff's physical and mental impairments with citations to specific evidence. The Commissioner likewise defers to the ALJ's factual recitation.

## III. "Disability" Defined and the ALJ's Decision

The Social Security Administration provides Disability Insurance Benefits (DIB) to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. § 423(a)(1)(D). The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that

precludes an applicant from performing a significant paid job – *i.e.,* "substantial gainful activity," in Social Security lexicon.[3]  42 U.S.C. § 423(d)(1)(A); *see Bowen*, 476 U.S. at 469-70.

To determine whether Plaintiff was under a benefits-qualifying disability, Administrative Law Judge (ALJ) Scott R. Canfield applied the Social Security Administration's 5-Step sequential evaluation procedure.  *See* 20 C.F.R. § 404.1520(a)(4). Steps 2, 3, and 4 are the most significant in this case.

At Step 2, the ALJ concluded that Plaintiff had several impairments, namely, "lumbar degenerative disc disease with radiculopathy, obesity, bipolar disorder and anxiety disorder."  (*PageID#* 46).

At Step 3, the ALJ concluded that Plaintiff's impairments or combination of impairments did not meet or equal the criteria in the Commissioner's Listing of Impairments, including sections 1.04, 12.04 and 12.06.  (*PageID##* 47-49).

At Step 4, the ALJ concluded that Plaintiff retained the residual functional capacity[4]:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he retains the functional capacity for work that involves lifting no more than 20 pounds occasionally and 10 pounds

---

[3] In addition, the impairment must be one "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

[4] A social-security claimant's "residual functional capacity" is an assessment of the most the claimant can do in a work setting despite his or her physical or mental limitations.  20 C.F.R. § 404.1545(a); *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

> frequently; standing/walking for a total of 4 hours in an 8-hour workday;
> sitting for a total of 6 hours in an 8-hour workday; he requires a 15-minute
> sitting break per hour; never climb ladders, ropes or scaffolds; occasionally
> climb ramps or stairs, stoop, kneel, crouch and crawl; frequently balance;
> avoid all exposure to hazards, i.e., dangerous machinery, unprotected
> heights, etc; limited to simple, repetitive, routine tasks with no fast-paced
> work, no strict production quotas, simple work decisions and minimal
> changes in the work setting; and limited to occasional contact with the
> public, coworkers and supervisors.

(*PageID## 49-50*).  The ALJ also concluded at Step 4 that Plaintiff's "statements

concerning his impairments and their impact on his ability to work are inconsistent with

the record as a whole and not entirely credible."  (*PageID# 50*).

The sum and substance of the ALJ's sequential evaluation ultimately led him to

conclude that Plaintiff was not under a benefits-qualifying disability.

## IV.  __Judicial Review__

Judicial review of an ALJ's decision proceeds along two lines: "whether the ALJ

applied the correct legal standards and whether the findings of the ALJ are supported by

substantial evidence."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir.

2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or

disagrees with the ALJ's factual findings or by whether the administrative record contains

evidence contrary to those factual findings.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708,

722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met –

that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a

conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . " *Rogers*, 486 F.3d at 241; *see Gentry*, 741 F.3d at 722.

The second line of judicial inquiry – reviewing for correctness the ALJ's legal criteria – may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.    Discussion

### A.    Plaintiff's Contentions

Plaintiff sets forth the following assignments of error: (1) the ALJ failed to properly weigh the record's treating source opinions; (2) the ALJ failed to properly consider Plaintiff's cellulitis as a source of limitations; (3) the ALJ did not adequately weigh the opinion of the psychological examiner; and (4) the ALJ's findings regarding Plaintiff's daily activities are unsupported. (Docs. ## 10 and 13).

### B.    Treating Medical Source Opinions

Social security regulations recognize several different types of medical sources: treating physicians and psychologists, nontreating yet examining physicians and psychologists, and nontreating/record-reviewing physicians and psychologists.  *Gayheart v. Comm'r Social Sec*., 710 F.3d 365, 375 (6th Cir. 2013).

> As a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a "nonexamining source"), and an opinion from a medical source who regularly treats the claimant (a "treating source") is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship (a "nontreating source").  In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."  Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

*Gayheart*, 710 F.3d at 375 (citing, in part, 20 C.F.R. §§ 404.1527(c)(1) and (2) (eff. April 1, 2012)).[5]  To effect this hierarchy, the Regulations adopt the treating physician rule.  *See Gayheart*, 710 F.3d at 375; *see also Rogers*, 486 F.3d at 242; *cf. Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008) ("in fact the technical name for the 'treating physician' rule is the 'treating source' rule").  The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with other substantial evidence in [a claimant's] case record."

*Gayheart*, 710 F.3d  at 376 (quoting 20 C.F.R. §404.1527(c)(2)); *see Gentry*, 741 F.3d at

---

[5] The Social Security Administration has re-lettered 20 C.F.R. §404.1527 without altering the treating physician rule or other legal standards.  *See Gentry*, 741 F.3d at 723.  The re-lettered version applies to decisions, like ALJ Lombardo's decision, issued on or after April 1, 2012.

723.  If both conditions do not exist, the ALJ's review must continue:

> When the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors.

*Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

As to non-treating medical sources, the regulations require ALJs to weigh their opinions "based on the examining relationship, (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling."  *Gayheart*, 710 F.3d  at 376 (citing 20 C.F.R. §404.1527(c)).

### C.    <u>Analysis</u>

Plaintiff first contends the ALJ failed to properly consider the opinions of his treating primary care physician Dr. Lease and his treating psychiatrist Dr. Woodrow. (Doc. #10, *PageID##* 832-38).

Turning first to the opinion of Dr. Lease, the ALJ rejected this physician's opinion as follows:

> I give the October 31, 2012 opinion of treating physician, Gene Lease, M.D., little weight because his limitations are overly restrictive, contrary to the evidence of record, and contrary to the claimant's testimony at the hearing regarding his ability to lift, stand, sit, etc. (Exhibit 13F).  The claimant sat through the hour-long hearing with no observable discomfort and no movement or adjustment in his chair.

(*PageID#* 53).  Perhaps the most glaring error in the ALJ's cursory analysis of Dr. Lease's opinion is the fact he merely stated Dr. Lease's opinion is "contrary to the evidence of

11

record," yet failed to identify with any specificity what portion of the record he deemed to be contrary. This constitutes a failure to provide "good reasons" for discounting the weight given to Dr. Lease's opinion because the Commissioner is required to provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9 at *12 (Soc. Sec. Admin. July 2, 1996); *see e.g. Gayheart*, 710 F.3d at 377 ("For example, the conclusion that [the treating physician's] opinions 'are not well-supported by any objective findings' is ambiguous. One cannot determine whether the purported problem is that the opinions rely on findings that are not objective (i.e., that are no the result of medically acceptable clinical and laboratory diagnostic techniques, *see* 20 C.F.R. § 404.1527(c)(2)), or that the findings are sufficiently objective but do not support the content of the opinions.") The ALJ also erred in his analysis by relying upon Plaintiff's ability to sit through the 1-hour long hearing "with no observable discomfort and no movement or adjustment in his chair" as support for discrediting Dr. Lease's opinion. (*PageID#* 53). The ALJ's lay observations of Plaintiff during a 1-hour administrative hearing have no probative value regarding Plaintiff's ability to function on a sustained basis nor should they be used to supplant the years of clinical examination findings and interpretation by Dr. Lease. *See Hall v. Celebrezze*, 314 F.2d 686, 690 (6th Cir. 1963) ("The ALJ may have expertise in some matters, but he does not supplant the medical expert."); *see also Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Chater*, 98 F.3d 966,

970 (7th Cir. 1996)) ("ALJs must not succumb to the temptation to play doctor and make

their own independent medical findings.").  Moreover, the ALJ actually asked Plaintiff if

he was experiencing any low back pain during the hearing and Plaintiff indicated he was:

"Today [the back pain is] medium actually."  (*PageID#* 81).  While being cross-examined

by his counsel, Plaintiff again stated his back was hurting him during the hearing.

(*PageID#* 98).  Even if Dr. Lease's opinion was not entitled to controlling weight, the

ALJ nonetheless still erred by failing to proceed to the deferential weight analysis.  As the

Sixth Circuit has held:

> If the ALJ does not accord controlling weight to the treating physician, the ALJ
> must still determine how much weight is appropriate by considering a number of
> factors, including the length of the treatment relationship and the frequency of the
> examination, the nature and extent of the treatment relationship, supportability of
> the opinion, consistency of the opinion with the record as a whole, and any
> specialization of the treating physician.

*Blakley*, 581 F.3d at 406.

As to the opinion of Plaintiff's treating psychiatrist, Dr. Woodrow, the ALJ also

assigned her opinion "little weight," finding as follows:

> I give the October 31, 2012 opinion of treating psychiatrist, Virginia Woodrow,
> M.D., little weight because her extreme and marked limitations are contrary to the
> weight of the evidence and the claimant's own testimony at the hearing.  For
> example, Dr. Woodrow indicated marked limitations in the areas of restriction of
> activities of daily living and concentration, persistence or pace, but the evidence
> and the claimant's testimony indicate otherwise.  On the other hand, Dr. Woodrow
> indicated that the claimant had only a slight limitation in his ability to accept
> instructions and respond appropriately to criticism from supervisors, but the
> claimant testified that he has a hard time interacting with other people. Further,
> there is substantial evidence in the record of the claimant smoking marijuana and
> reporting it to mental health counselors, which could affect his presentation during
> sessions.  Dr. Woodrow indicated that the claimant's psychiatric condition did not

13

exacerbate his experience of pain or other physical symptoms.  Finally, she did not even report his correct birthdate (Exhibit 12F).

(*PageID#* 53).  Although the ALJ stated that Dr. Woodrow's opinion is "contrary to the weight of the evidence and claimant's own testimony at the hearing," he again fails to identify any portion of the mental health evidence contradicting Dr. Woodrow's conclusions or Plaintiff's own testimony.  As previously discussed, the Commissioner is required to provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  Soc. Sec. Rul. No. 96-2p, 1996 SSR LEXIS 9 at *12 (Soc. Sec. Admin. July 2, 1996); *see e.g. Gayheart*, 710 F.3d at 377.  Even assuming the ALJ need not provide Dr. Woodrow's opinion with controlling weight, the ALJ nonetheless again failed to consider the deferential weight factors.  *See Blakley*, 581 F.3d at 406.  For example, the ALJ failed to substantively discuss Dr. Woodrow's status as a treating specialist and the nature and extent of her treatment relationship with Plaintiff.

As the ALJ failed to properly consider the opinions of both Drs. Lease and Woodrow, Plaintiff's Statement of Errors is well taken.[6]

## VI.    Remand is Warranted

A remand is appropriate when the ALJ's decision is unsupported by substantial evidence or when the ALJ failed to follow the Administration's own regulations and that shortcoming prejudiced the plaintiff on the merits or deprived the plaintiff of a substantial

---

[6]   In light of the above review, and the resulting need for remand of this case, an in-depth analysis of Plaintiff's remaining contentions is presently unwarranted.

14

right. *Bowen*, 478 F3d at 746. Remand warranted by an ALJ's failure to follow the regulations arises, for example, when the ALJ failed to provide "good reasons" for rejecting a treating medical source's opinions, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545-47 (6th Cir. 2004); failed to consider certain evidence, such as a treating source's opinions, *see Bowen*, 478 F3d at 747-50; failed to consider the combined effect of the plaintiff's impairments, *see Gentry*, 741 F.3d at 725-26; or failed to provide specific reasons supported by substantial evidence for finding the plaintiff to lack credibility, *Rogers*, 486 F.3d at 249.

Under sentence four of 42 U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under sentence four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky*, 35 F.3d at 1041. The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is weak. *Faucher v. Sec'y of Health & Humans Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A remand for an award of benefits is unwarranted in the present case because the evidence of disability is not overwhelming and because the evidence of a disability is not strong while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet, Plaintiff is entitled to an Order remanding this matter to the Social Security Administration pursuant to sentence four of §405(g) due to problems set forth above. On remand, the ALJ should

15

be directed to: (1) re-evaluate the record under the legal criteria set forth in the Commissioner's Regulations, Rulings, and as required by case law; and (2) determine anew whether Plaintiff was under a disability and thus eligible for DIB and SSI.

Accordingly, the case should be remanded to the Commissioner and the ALJ for further proceedings consistent with this Report and Recommendations.

### IT IS THEREFORE RECOMMENDED THAT:

1.      The Commissioner's non-disability finding be vacated;

2.      No finding be made as to whether Plaintiff Mark Vondenberger was under a "disability" within the meaning of the Social Security Act;

3.      This case be remanded to the Commissioner and the Administrative Law Judge under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Report; and

4.      The case be terminated on the docket of this Court.


June 23, 2015


                        s/Sharon L. Ovington
                        Sharon L. Ovington
                Chief United States Magistrate Judge


16

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F. 2d 947, 949-50 (6th Cir. 1981).

17